UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-80907-RLR

CHANON MILLER,

    Plaintiff,

v.

RIC BRADSHAW, in his official capacity as
Palm Beach County Sheriff;
JUAN F. RAMIREZ, in his individual capacity;
STEVEN L. MURRAY, in his individual capacity;
DANIEL S. FELLOWS, in his individual capacity;
IRA S. PESKOWITZ, in his individual capacity;
BRISA LANDA, in her individual capacity; and
NICOLE A. BITNER, in her individual capacity,

    Defendants.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**THIS CAUSE** is before the Court on the Motion to Dismiss [DE 52] filed by Defendants Juan F. Ramirez, Steven L. Murray, Daniel S. Fellows, Ira S. Peskowitz, Brisa Landa, and Nicole A. Bitner (collectively, "Defendants"), who were all sued in their individual capacities as Palm Beach County Sheriff's Office deputies. The Court has reviewed the Motion, the Response [DE 55], the Reply [DE 56], and the record, and is fully advised in the premises. For the reasons set forth below, Defendants' Motion is **GRANTED**.

    I.    FACTUAL BACKGROUND

The Court accepts as true the following allegations in Plaintiff's Second Amended Complaint. DE 48. In 2021, Plaintiff Chanon Miller and her ex-fiancé, Eric McGregor, purchased and moved into their home in Florida with their one-year-old child. *Id.* ¶¶ 28–29. In November 2021, McGregor began acting erratically and abusively: he was using drugs, erupting into loud

outbursts, and carrying and displaying a firearm in an unsafe manner. *Id.* ¶ 30. Due to Plaintiff's concerns for her and her child's safety, she installed interior surveillance cameras. *Id.* ¶ 31. Plaintiff ended her relationship with McGregor in December 2021, but the two continued to cohabitate in the home. *Id.* ¶ 34. McGregor would respond with threats and abuse whenever Plaintiff attempted to discuss selling the home and separating. *Id.* ¶¶ 35–40.

On January 3, 2022, after McGregor acted angrily and erratically when Plaintiff once again attempted to discuss selling the home, Plaintiff called 911 for the first time. *Id.* ¶ 40. Palm Beach County Sheriff's Office ("PBCSO") deputies responded but informed Plaintiff that there was nothing they could do after Plaintiff denied that McGregor got physical with her. *Id.* ¶ 43.

On January 8, 2022, after continued incidents with McGregor, Plaintiff checked her cell phone application connected to the home's interior security cameras. *Id.* ¶ 49. Plaintiff discovered she could not access the saved recordings and knew this meant that McGregor had disconnected the interior security cameras. *Id.* Plaintiff drove to her home to try to retrieve the security hard drives before McGregor destroyed any evidence of his abusive behavior. *Id.* ¶¶ 50–51. McGregor began yelling at Plaintiff to get out, grabbed Plaintiff very roughly by her arm, pulled on Plaintiff, and scratched her. *Id.* ¶¶ 52–53. At around 6:54 p.m., Plaintiff called 911 for the second time. She reported that there was a gun in the house, that she believed McGregor had been using drugs, that it was getting physical, and that she already had a case number from the prior 911 call on January 2, 2022. *Id.* ¶¶ 54–55.

PBSO deputies, including Defendants Ramirez, Murray, Peskowitz, and Bitner, asked Plaintiff what had occurred. *Id.* ¶ 63. McGregor misled the deputies into believing that Plaintiff was a scorned ex-girlfriend. *Id.* ¶ 64. Defendant Murray concluded that the call was a civil issue

2

and that Plaintiff needed to address it in the court system. *Id.* ¶ 69. Defendants asked Plaintiff and McGregor whether they had a place to stay to cool off. *Id.* ¶ 70. Plaintiff voluntarily drove to her mother's home. *Id.* ¶ 71.

Shortly after Plaintiff arrived to her mother's house, she realized she had not retrieved the hard drives for the home's interior surveillance footage. *Id.* ¶ 72. Plaintiff returned to her home to search for the hard drives. *Id.* ¶¶ 73–76. The situation between Plaintiff and McGregor escalated: Plaintiff locked herself in the bathroom because she feared for her safety. *Id.* ¶ 76. Plaintiff continued searching for the hard drives, and when she grabbed one of her bags, she saw McGregor's gun in it. *Id.* ¶ 78. McGregor confronted Plaintiff and pushed her from behind, causing Plaintiff to fall down the stairs. *Id.* ¶ 79.

At around 8:41 p.m., Plaintiff called 911 a third time. *Id.* ¶ 80. She reported that she was battered and in fear of McGregor, that she found his gun in the house, and that he tackled her down the stairs. *Id.* ¶¶ 80–82. Plaintiff explained the entire situation to the 911 operator. *Id.* ¶¶ 83–91. During this time, McGregor called another 911 operator and stated that Plaintiff hit him with a glass, that Plaintiff grabbed his firearm and ran outside with it, that Plaintiff tackled him down the stairs, and that Plaintiff did not live at the home because McGregor had asked her to leave a week ago. *Id.* ¶¶ 93, 97–98.

Defendants Ramirez, Murray, Fellows, Peskowitz, Land, and Bitner responded to Plaintiff's third 911 call. *Id.* ¶ 100. Plaintiff explained her history to the deputies, but McGregor misled the deputies into believing that he was the one who had called the police earlier. *Id.* ¶¶ 100–101. Defendants arrested Plaintiff, but not McGregor. *Id.* ¶ 120. All charges against Plaintiff were eventually dropped. *Id.* ¶¶ 125–126.

## II. PROCEDURAL BACKGROUND

Plaintiff filed her Second Amended Complaint against Defendants on March 27, 2025. Plaintiff asserts that her Fourth Amendment rights were violated when Defendants caused her false arrest, false imprisonment, and malicious prosecution. DE 48 ¶ 1. Plaintiff attached fourteen exhibits to her operative complaint, including photographs, text messages, and transcripts of Plaintiff's 911 calls. Ric Bradshaw, sued in his official capacity as Sheriff, filed an answer and affirmative defenses on April 11, 2025. DE 51.

The remaining Defendants, sued in their individual capacities, moved to dismiss based on qualified immunity. DE 52. Defendants' Motion attached a transcript of McGregor's 911 call and the PBCSO offense reports from the incident in question. *Id.*

## III. STANDARD OF REVIEW

A court may grant a motion to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (explaining that the

4

plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

A court ruling on a motion to dismiss a complaint accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017). The court need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange*, 934 F.3d 1270, 1273 (11th Cir. 2019). Dismissal for failure to state a claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the [plaintiff's] allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Finally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir.2007). When "a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir.2002)).

## IV.     ANALYSIS

Plaintiff has sued the individual Defendants under 42 U.S.C. § 1983 for violating Plaintiff's Fourth Amendment right to be free from unreasonable seizures. DE 48. Defendants argue that Plaintiff's Complaint against them must be dismissed because they had probable cause to arrest Plaintiff, and therefore are shielded from individual liability by qualified immunity. DE 52. The Court first sets forth the standard for qualified immunity, the standard for probable cause—that is, whether a seizure was lawful—and then applies those standards.

### A. Qualified Immunity Standard

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although the defense of qualified immunity is usually raised at the summary judgment stage, it may be raised and considered on a motion to dismiss. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *see also Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (requiring that the issue of qualified immunity be resolved "at the earliest possible stage in litigation"). Once qualified immunity is raised by a defendant, and it is established that the government official was acting within his/her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1278 (11th Cir. 2023). The scope of the inquiry then concerns whether (1) the defendant violated a constitutional right and (2) the violated right was clearly established. *Id.*

Here, Plaintiff does not dispute that Defendants "acted within the course and scope of their employment." DE 48 ¶ 47. The Court therefore focuses its qualified immunity analysis on the question of whether, as pled, Defendants conducted an unreasonable seizure of Plaintiff and therefore violated a constitutional right that was clearly established at the time of the incident.

### B. Probable Cause Standard

The Fourth Amendment prohibits unreasonable searches and seizures by the government. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The existence of probable cause is a complete defense to a claim for false arrest, false imprisonment, and malicious prosecution. *See Case v.*

6

*Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009); *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002); *Butler v. Smith*, 85 F.4th 1102, 1112–13 (11th Cir. 2023).  "[P]robable cause exists if the totality of the circumstances could persuade a reasonable officer that there is a substantial chance of criminal activity by the person who is arrested.  A substantial chance is all that is required, not an actual showing of such activity." *Harris v. Hixon*, 102 F.4th 1120, 1126 (11th Cir. 2024) (quotation marks and citations omitted).  Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

In a claim for false arrest, the plaintiff has the burden to demonstrate the absence of probable cause for the alleged false arrest. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998), *cert denied*, 525 U.S. 823 (1998).  That is, an officer needs only "arguable" probable cause to assert the qualified immunity defense against a false arrest claim. *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)).  The Court must make its probable cause determination based upon the facts that were known to the arresting officer at the time of the arrest. *Id.* at 1184.  An officer must possess only "sufficient probability, not certainty" to meet "the touchstone of reasonableness under the Fourth Amendment." *Hill v. California*, 401 U.S. 797, 804 (1971).

With these principles in mind, the Court turns next to the parties' arguments.

### C.   Application

Defendants argue that probable cause existed for Plaintiff's arrest because the case concerns alleged domestic violence between Plaintiff and McGregor. DE 52 at 12.  Both parties claimed to be the victim of the other's violent behavior. *Id.*; DE 48 ¶¶ 80–98.  Defendants argue that when officers are making probable cause determinations, they are not required "to rule out a

7

suspect's innocent explanation for suspicious facts." Defendants cite to a transcript of McGregor's 911 call, DE 55-1, as well as the deputies' offense reports, DE 55-2, which the Court considers under the incorporation-by-reference doctrine. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (stating that a court may properly consider a document not referred to in a complaint if the document is central to the plaintiff's claims and undisputed, meaning that its authenticity is not challenged).

In response, Plaintiff argues that Defendants did not have arguable probable cause given the events leading up to Plaintiff's arrest. DE 55 at 8. Plaintiff emphasizes that courts must look at the "totality of the circumstances" in conducting a probable cause analysis. *Id.* (citing *Garcia*, 75 F.4th at 1187–88). Plaintiff argues that Defendants seemed to willfully ignore recent events: Defendants had responded multiple times to calls regarding McGregor's violence toward Plaintiff before her arrest; on the day of her arrest, Plaintiff had called 911 and provided detailed information; Defendants should have known that Plaintiff feared for her safety given McGregor's abusive history and the physical abuse Plaintiff endured that day; and Plaintiff tried to provide Defendants evidence to corroborate McGregor's behavior. *Id.* at 10. Plaintiff argues that Defendants conducted an "incompetent, biased investigation" and therefore lacked probable cause. *Id.* at 12.

Based on the Plaintiff's allegations, Plaintiff's exhibits, and Defendants' exhibits, the facts known to the arresting officer at the time of Plaintiff's arrest were as follows. When the Defendants responded to Plaintiff's and McGregor's 911 calls later in the evening of January 8, 2022, Defendants were aware of Plaintiff's previous concerns about her safety and that she agreed earlier that evening to go to her mother's house to "cool off." DE 52 at 13; DE 52-2 at 2–3.

Defendants knew that Plaintiff was told to call law enforcement if she needed to return to the house for any reason, so that law enforcement could accompany Plaintiff for her safety. DE 52-2 at 3. Defendants knew that Plaintiff then voluntarily returned to the house without notifying the police. *Id.* at 4. And Defendants knew that Plaintiff entered the property and took McGregor's firearm without his permission. *Id.*; DE 48 ¶¶ 72–76. Defendants heard Plaintiff's version of the story: "She said that she came to the house to grab the cameras from the house to use them as evidence against [McGregor]. . . . In the process, she grabs the brown bag containing the gun. And proceeded to take without his permission." DE 55-2 at 4. Defendants heard McGregor's version of the story: Plaintiff refused to give up the brown bag containing McGregor's gun; the two fought over the gun, causing both to fall down some stairs; both were on the phone with 911 during the altercation; and during the altercation, Plaintiff kicked McGregor in the stomach. *Id.*

Although the Court is sympathetic to Plaintiff's plight, the Eleventh Circuit has recognized that domestic disputes often involve conflicting evidence in volatile circumstances: "Deference to on-the-spot, reasonable judgments made by officers 'may be particularly warranted in domestic disputes' because they 'require police to make particularly delicate and difficult judgments quickly' and 'violence may be lurking and explode with little warning.'" *Davis v. City of Apopka*, 78 F.4th 1326, 1337 (11th Cir. 2023), *cert. denied sub nom. Davis v. City of Apopka, Fla.*, 144 S. Ct. 2528 (2024) (quoting *Fletcher v. Town of Clinton*, 196 F.3d 41, 50 (1st Cir. 1999)).

Here, Plaintiff has not met her burden to demonstrate the absence of arguable probable cause for the alleged false arrest. *Rankin*, 133 F.3d at 1436; *Garcia*, 75 F.4th at 1186. Defendants may arrest a person without a warrant when there is "probable cause to believe that the person has committed an act of domestic violence." Fla. Stat. § 901.15(7). Given McGregor's claim that

9

Plaintiff had kicked in the stomach, given that Plaintiff had taken his firearm without his permission, and given that Plaintiff had returned to the home after Defendants advised her not to return without law enforcement, Defendants had arguable probable cause to arrest Plaintiff for "simple battery (domestic)." DE 55-2 at 4; Fla. Stat. § 784.03(1)(a)(1) (defining the offense of battery as when a person actually and intentionally touches or strikes another person against the will of the other). "Reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" Plaintiff. *Wilkerson v. Seymour*, 736 F.3d 974, 977–78 (11th Cir. 2013).

Therefore, because Defendants had arguable probable cause to arrest Plaintiff, Plaintiff was not unreasonably seized in violation of her clearly established Fourth Amendment right. Because "[q]ualified immunity shields government officials from individual-capacity suits for actions taken while performing a discretionary function so long as their conduct does not violate a 'clearly established' constitutional right," the individual Defendants are entitled to qualified immunity. *Montanez v. Carvajal*, 889 F.3d 1202, 1207 (11th Cir. 2018).

## V.     CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Motion to Dismiss [DE 52] by Defendants Juan F. Ramirez, Steven L. Murray, Daniel S. Fellows, Ira S. Peskowitz, Brisa Landa, and Nicole A. Bitner is **GRANTED**. Plaintiff's claims against these Defendants are **DISMISSED**, and the Court's dismissal is without leave to amend.[1]

---

[1] Plaintiff has amended her complaint twice, and the Court has previously ruled on a motion to dismiss. When the Court granted Plaintiff leave to amend a second time in a prior order, the Court's leave included leave for Plaintiff to remove the attachments from her pleading that formed the basis for Defendant's Motion to Dismiss. Plaintiff declined to remove the attachments, and the Court previously informed Plaintiff that the Court was not inclined to rule on the legal sufficiency of Plaintiff's pleading twice more—once with the attachments and once without. Thus, the Court informed Plaintiff that if she elected to amend her complaint again (and she did), it would be Plaintiff's final opportunity to amend her pleading. DE 47 at 4. For this reason, the Court denies Plaintiff further leave to amend.

This case shall proceed against Defendant Ric Bradshaw, in his official capacity as Palm Beach County Sheriff, who filed an answer on April 11, 2025.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 8th day of August, 2025.

                                                    ROBIN L. ROSENBERG
                                                    UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record